# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **EVERYTOWN FOR GUN SAFETY SUPPORT FUND**,<br>  450 Lexington Avenue<br>  P.O. Box 4184<br>  New York, NY 10017,<br><br>         *Plaintiff,*<br><br>   v.<br><br>**UNITED STATES DEPARTMENT OF JUSTICE**,<br>  950 Pennsylvania Avenue, NW<br>  Washington, DC 20530-0001,<br><br>         *Defendant.* | Civil Action No. 19-3103<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF** |

## PRELIMINARY STATEMENT

1. Plaintiff Everytown for Gun Safety Support Fund ("Everytown"), an independent, non-partisan 501(c)(3) organization dedicated to understanding and reducing gun violence in America, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking an order requiring Defendant United States Department of Justice ("Department" or "DOJ") to release agency records that Everytown requested from DOJ a year and a half ago on April 16 and 17, 2018 ("the Requests"), and which have been unlawfully withheld.

2. Two sets of FOIA requests are at issue here. First, Everytown seeks records relating to communications and meetings between certain DOJ officials and representatives of the National Rifle Association or the National Shooting Sports Foundation following the mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida, on February 14, 2018. Second,

1

Everytown seeks records regarding the fate of certain federal gun violence prevention initiatives launched during the previous presidential administration.

3. The requested records will shed light on topics of vital national importance. Everytown seeks to learn the extent to which the DOJ's policy choices are informed or influenced by gun lobby access to government decision-makers, and why certain gun safety initiatives have been abandoned.

4. To advance the public interests served by Everytown's Requests while minimizing the burdens on DOJ, Everytown informed DOJ ten months ago that it was willing to narrow its requests to specific custodians and search terms, and to accept a rolling production schedule. Six months ago, DOJ represented that it had completed its email search for the requested records, and that the next step would be to review the search results.

5. Everytown recognizes that *reasonable* delays may be encountered when seeking documents through the FOIA process. However, the delays that Everytown has encountered have been unreasonable. Notwithstanding Everytown's willingness to compromise and DOJ's representations that it is processing documents for review, Everytown has yet to receive any substantive response from DOJ, let alone any requested records or even a production schedule, ***a year and a half*** after filing the Requests. Specifically, DOJ has never stated whether it will produce any documents in response to Everytown's Requests, even if narrowed as Everytown has proposed. This is confirmed by the fact that, as of the filing of this Complaint, the federal government's website for tracking FOIA requests (www.foiaonline.gov) reports that the "Final Disposition" of each Request is "Undetermined."

6. Therefore, as a last resort, Everytown is seeking judicial intervention to require DOJ to comply with its obligations under FOIA, whose "basic purpose . . . is to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).

7. Everytown now respectfully requests that this Court order the immediate disclosure of all responsive records that DOJ has unlawfully withheld or, in the alternative, set a schedule for rolling productions that begins promptly and which DOJ is required to meet.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action and these parties pursuant to 5 U.S.C. §§ 552(a)(4)(B), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

9. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

10. Plaintiff Everytown is an independent, non-partisan 501(c)(3) gun violence prevention organization headquartered in New York. Everytown is dedicated to understanding and reducing gun violence in America by, among other things, conducting original research, developing evidence-based policies, and communicating this knowledge to the American public and policymakers.

11. Everytown regularly publishes reports and fact sheets containing research into the sources and causes of gun violence and potential avenues for reducing and preventing such violence. Everytown reports its findings to the public in order to educate citizens, legislators, policymakers, and courts grappling with issues of gun violence and the prevention thereof.

12. Defendant DOJ is an agency of the United States Government, within the meaning of 5 U.S.C. § 552(f)(1), and is headquartered at 950 Pennsylvania Avenue, N.W., Washington, DC 20530. DOJ has possession, custody, and control of records to which Everytown seeks access.

## FACTS

13. As set forth below, a year and a half ago, Everytown requested a narrow set of documents in DOJ's custody and control that relate to the federal government's actions and communications with respect to gun violence prevention. Notwithstanding DOJ's representations that it is "processing" potentially responsive documents, DOJ has yet to state whether it will actually comply with Everytown's Requests, let alone disclose a single document or even provide an estimated rolling production schedule.

14. For the first request, by letters dated April 16, 2018 (the "First Request"), Everytown requested records showing communications and meetings between DOJ officials and the National Rifle Association ("NRA"), the National Rifle Association Institute for Legislative Action ("NRA-ILA"), or the National Shooting Sports Foundation ("NSSF"). This request comprised four similar but separate requests to different DOJ Offices: the Office of the Attorney General ("OAG"), the Office of the Deputy Attorney General ("ODAG"), the Office of Public Affairs ("OPA"), and the Office of Legislative Affairs ("OLA"). These four requests to the OAG, ODAG, OPA, and OLA, as submitted to DOJ, are attached hereto as Exhibit A.

15. Specifically, the First Request was limited to records dated on or after February 14, 2018, the date of the mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida in which a gunman killed seventeen students and staff members and injured seventeen others. The First Request was intended to cover a time period during which members of the Executive branch of the federal government publicly expressed interest in bipartisan gun violence prevention legislation, but changed course after meeting with NRA officials.[1] Everytown

---

[1] *Compare* The White House, *Remarks by President Trump, Vice President Pence, and Bipartisan Members of Congress in Meeting on School and Community Safety* (Feb. 28, 2018), *available at* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-

4

submitted the First Request to better understand the gun lobby's influence over the federal government's policy response to the Parkland mass shooting.

16.     By letter dated May 14, 2018 (attached hereto as Exhibit B), DOJ addressed the First Request, indicating that these requests were assigned the numbers DOJ-2018-004190 (AG), DOJ-2018-004191 (DAG), DOJ-2018-004192 (PAO), and DOJ-2018-004193 (OLA), respectively.  This DOJ letter assigned Everytown's request to the "complex track," citing "unusual circumstances" because the request would require "a search in and/or consultation with other Offices." Ex. B at 1.  DOJ stated: "Because of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute." *Id*.

17.     For the second request, by letters dated April 17, 2018 (the "Second Request"), Everytown requested records pertaining to the fate of certain gun violence prevention initiatives launched in 2015 and 2016, and related communications between DOJ officials and certain gun lobby organizations and gun industry members.  The Second Request was submitted to understand the gun lobby's influence in the federal government's non-implementation of these federal gun violence prevention initiatives.  The Second Request comprised four identical requests to different DOJ Offices: the OAG, OPA, OLA, and the Office of Legal Policy ("OLP").  These four request letters are attached hereto as Exhibit C.

18.     Specifically, the Second Request sought records from January 20, 2017 onwards pertaining to documents and communications regarding a series of executive actions designed to reduce gun violence, announced by the White House in January 2016 ("the 2016 Gun Violence

---

pence-bipartisan-members-congress-meeting-school-community-safety (last visited Oct. 15, 2018), *with* Chris Cox (@ChrisCoxCap6), Twitter (Mar. 1, 2018, 6:07 PM), https://twitter.com/ChrisCoxCap6/status/969393625611333632.

Prevention Initiatives").[2]  These actions fell into four broad federal policy initiatives: (1) improving the effectiveness of the national background check system; (2) making communities safer from gun violence, such as by increasing enforcement of existing gun laws; (3) improving mental health treatment and facilitating the submission of mental health records into the national background check system; and (4) promoting improvements in and use of gun safety technology. The NRA opposed the 2016 Gun Violence Prevention Initiatives, characterizing the policy rollout as an effort to "restrict[] the rights of America's law-abiding gun owners . . . ."[3]  Following the January 20, 2017 inauguration of Donald Trump as president, many of the 2016 Gun Violence Prevention Initiatives were apparently abandoned.

19.    In addition, the Second Request sought documents and communications from January 2016 onwards pertaining to a related federal program, known as the "Gun Safety Technology Challenge," which had been announced in 2015 by the National Institute of Justice and was intended to encourage the private sector to develop user-authorization technology for firearms, also known as "smart gun" technology.  The Second Request also sought communications with certain gun companies and gun lobby organizations pertaining to "smart guns" and the 2016 Gun Violence Prevention Initiatives.

20.    By letter dated May 16, 2018 (attached hereto as Exhibit D), DOJ addressed the Second Request, indicating that these requests were assigned the numbers DOJ-2018-004204 (AG), DOJ-2018-004206 (OLP), DOJ-2018-004207 (PAO), and DOJ-2018-004208 (OLA),

---

[2] The White House, Office of the Press Secretary, *Fact Sheet: New Executive Actions to Reduce Gun Violence and Make Our Communities Safer* (Jan. 4, 2016), *available at* https://obamawhitehouse.archives.gov/the-press-office/2016/01/04/fact-sheet-new-executive-actions-reduce-gun-violence-and-make-our (last visited Oct. 15, 2019).

[3] National Rifle Association Institute for Legislative Action, *Obama Issues Executive Actions on Guns* (Jan. 8, 2016), *available at* https://www.nraila.org/articles/20160108/obama-issues-executive-actions-on-guns (last visited Oct. 15, 2019).

6

respectively. Again, DOJ assigned the request to the "complex track," citing "unusual circumstances" because the request would supposedly require "a search in and/or consultation with other Offices." *See id.* at 1.

21. In August and October 2018, Everytown sought updates from DOJ about the status of the Requests but received no response. Finally, in November 2018, Everytown received a return call from DOJ. Ultimately, on November 8, 2018, Everytown spoke with DOJ's FOIA public liaison. The public liaison offered to expedite the Requests by limiting them to documents from only three of the offices from which documents were requested (the OAG, ODAG, and OLA), and limiting the documents contained only in the Departmental Executive Secretariat ("DOJ ExecSec")—a source that would limit disclosures to certain public-facing materials including official correspondence, manuals, and policy statements.

22. On November 16, 2018, Everytown rejected this offer, explaining that DOJ ExecSec records would not include communications with third parties and meeting notices—the essential records sought by Everytown's Requests.

23. After this exchange, Everytown continued to communicate via email with DOJ on multiple occasions regarding the Requests. Examples of Everytown's willingness to compromise, notwithstanding DOJ's statutorily improper efforts to withhold responsive documents unless Everytown unnecessarily narrowed its Requests, are summarized below.

24. By letter dated December 14, 2018 (attached hereto as Exhibit E), Everytown informed DOJ that it would be willing to discuss narrowing the Requests by limiting the list of custodians to be searched, limiting the search terms to be used, limiting the timeframe of documents to be searched, and/or accepting rolling productions as records are approved for disclosure. Ex. E at 3.

25. By email dated December 17, 2018 (email chain attached hereto as Exhibit F), DOJ stated that Everytown's Requests could be "placed in a faster 'narrow' ediscovery search queue" and "achieve the benefit of an email search without having [the] search placed in [DOJ's] longest, slowest queue," but only if Everytown would narrow its list of email custodians to be searched. Ex. F at 8-9.

26. On December 22, 2018, portions of the United States government, including DOJ's disclosure office, shut down for 35 days and then re-opened on January 25, 2019.

27. By email dated February 8, 2019, Everytown responded by expressing interest in this narrowing proposal, on the condition that Everytown could later "request a reasonable number of additional custodians and search term searches if the first limited custodian search proves inadequate." Everytown further identified eight custodians for the First Request and 15 custodians for the Second request (five of which overlapped with the First Request's custodian list), and specific search terms for each Request.

28. By email dated March 22, 2019, DOJ informed Everytown: "Should you agree to limit your requests as proposed in your February 8, 2019 letter and, upon receipt of our final response find it inadequate, we can certainly conduct further searches of additional records custodians. **That said, and to be clear, such a second records search would constitute a second FOIA request which would be processed based on date it was submitted to this Office and not based on the date of these original requests. Put differently, we cannot agree to narrow the search and then, upon providing our final response to you, then broaden if the response did not satisfy you**. Such an agreement could open us up to a repeating cycle of processing a never-ending request with each final response bringing forth new search inquiries on the same matter." Ex. F at 5 (emphasis added).

8

29. By email dated March 27, 2019, Everytown responded: "Provided that the agency can meet a reasonable production schedule, we agree to move forward with the searches on our listed custodians, and agree that searches on additional custodians would constitute a new FOIA request (while reserving all other rights). **Can you please provide an estimate of when we can start receiving documents if we go this route?** One of our concerns remains that it has already been almost a year since the original request was made." Ex. F at 4 (emphasis added).

30. By email dated April 23, 2019, DOJ informed Everytown: "We have completed the email searches for both requests. At this time, we need to review the search results to identify the responsive material and then process that material for disclosure. In brief, the email search in 18-004190 located approximately 5,000 documents whereas the search in 18-004204 located approximately 60,000 documents." Ex. F at 1. DOJ further stated that "certain categories of records that may not be of interest to you" fell into one of four categories that could be eliminated from the scope of review in order to facilitate review:

   a. "Attorney General News Briefings (these are a daily compilation of news articles distributed for informational purposes; they do not contain any Department commentary on the articles themselves)";

   b. "Emails forwarding specific news articles that do not otherwise comment on the article itself":

   c. "Administrative emails setting up the time/place/logistics for meetings that do not otherwise discuss the content of the meeting itself"; and

   d. "Emails forwarding press releases that are themselves already available on the Department's website."

*See id.* at 1-2.

31.     By email dated later that same day, in yet another offer of compromise to facilitate the disclosure of documents, Everytown responded that three of DOJ's four identified categories of documents should be eliminated from review, but that "[a]dministrative emails setting up the time/place/logistics for meetings that do not otherwise discuss the content of the meeting itself" (*see* Paragraph 30(c) above) remained of interest to Everytown and should be reviewed for disclosure. Ex. F at 1.

32.     DOJ did not respond to Everytown's April 23, 2019 email further narrowing its request. Counsel for Everytown contacted DOJ twice more in May and June 2019 seeking a status update on the Requests.

33.     By email dated June 11, 2019, DOJ stated that it had begun the records review for the Requests and that the review was ongoing. However, the email did not commit to producing any records or provide any production schedule.

34.     Despite another follow-up email from Everytown's counsel to DOJ on June 12, 2019 seeking an approximate production schedule, Everytown has received no further substantive communications from DOJ pertaining to the disclosure of records in response to the Requests at issue here.

35.     From September 24, 2019 through September 26, 2019, Everytown received automated emails from DOJ's Office of Information Policy ("OIP") explaining that certain FOIA requests were being administratively closed and consolidated with the "lead request," without any substantive effect on DOJ's consideration of the requests. For this reason, requests DOJ-2018-004191, DOJ-2018-004192, and DOJ-2018-004193 were administratively closed and consolidated with DOJ-2018-004190 (*i.e.*, the First Request), and DOJ-2018-004206, DOJ-2018-004207, and DOJ-2018-004208 were administratively closed and consolidated with DOJ-2018-004204 (*i.e.*,

the Second Request). OIP's emails stated that "nothing has changed with regard to the processing of your request, which is still being processed on behalf of all of the Department components that had previously been provided individual tracking numbers. The entirety of your request will be processed under the one lead number, as originally submitted."

36. As of the date this Complaint was filed, the federal government's website for tracking FOIA requests (www.foiaonline.gov) reports that the "Final Disposition[s]" of the First and Second Requests (*i.e.*, DOJ-2018-004190 and DOJ-2018-004204) are "Undetermined." Screen captures of those reports are attached hereto as Exhibit G.

37. To date, although DOJ has represented that it is processing documents for review, and although DOJ has identified responsive documents, it has not provided any substantive response to Everytown's FOIA Requests, because DOJ has never informed Everytown of DOJ's determination of "whether to comply with" Everytown's Requests, why DOJ reached such a determination, or how Everytown could appeal such a determination if adverse. *See* 5 U.S.C. § 552(a)(6)(A)(i); *see Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 65 (D.C. Cir. 1990) ("A [FOIA] response is sufficient for purposes of requiring an administrative appeal if it includes: the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse."); *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("[A] 'determination' under Section 552(a)(6)(A)(i) must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future. Rather, in order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the

documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse.").

38. DOJ's failure to provide any substantive response about whether or not it will comply with Everytown's Requests, which have been pending for a year and a half, serves to constructively exhaust Everytown's administrative remedies. *See* 5 U.S.C. § 552 (a)(6)(C)(i); *e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Energy*, 310 F. Supp. 2d 271, 294-95 (D.D.C. 2004) (requester constructively exhausted administrative remedies when agency's response to requester made "no substantive response to the FOIA request"), *aff'd in part & rev'd in part on other grounds*, 412 F.3d 125 (D.C. Cir. 2005).

39. Everytown now seeks an order requiring DOJ to release, in a timely manner, all requested records that have been unlawfully withheld, or agree to a reasonable rolling production schedule enforced by the Court.

## CAUSE OF ACTION

### Violation of FOIA for Failure to Release Records Sought through the Requests

40. Everytown incorporates by reference and re-alleges Paragraphs 1-39.

41. DOJ's failure to release records sought through the Requests violates FOIA, 5 U.S.C. § 552(a).

42. Everytown has constructively exhausted any and all necessary administrative remedies.

43. Everytown has a legal right under the FOIA to obtain the information it seeks, and there is no legal basis for the denial by DOJ of said right.

## **REQUESTED RELIEF**

WHEREFORE, Everytown prays that this Court:

    a)       order DOJ to disclose the records requested;

    b)       set a schedule for producing requested records to Everytown;

    c)       award Everytown its costs and reasonable attorney's fees incurred in this action;

    d)       expedite this proceeding as provided for in 28 U.S.C. § 1657; and

    e)       grant such other relief as the Court may deem just and proper.

Dated: October 16, 2019.

                                          Respectfully submitted,

                                          /s/ Murad Hussain

| EVERYTOWN LAW | ARNOLD & PORTER KAYE SCHOLER LLP |
|---|---|
| Alla Lefkowitz | Murad Hussain (D.C. Bar No. 999278) |
| Aaron Esty | David McMullen, PhD (D.C. Bar No. 1600382) |
| 450 Lexington Ave. | 601 Massachusetts Ave., NW |
| P.O Box 4184 | Washington, DC 20001-3743 |
| New York, NY 10017 | Tel: (202) 942-5000 |
| Tel: (646) 324-8365 | Fax: (202) 942-5999 |
| Fax: (917) 410-6932 | Murad.Hussain@arnoldporter.com |
| alefkowitz@everytown.org | David.McMullen@arnoldporter.com |
| aesty@everytown.org | |
| | Alexander Shaknes |
| | Jesse M. Feitel |
| | 250 West 55th Street |
| | New York, NY 10019-9710 |
| | Tel: (212) 836-8000 |
| | Fax: (212) 836-8689 |
| | Alexander.Shaknes@arnoldporter.com |
| | Jesse.Feitel@arnoldporter.com |

*Attorneys for Plaintiff*
*Everytown For Gun Safety Support Fund*